# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BENEDICTA RAMOS A.K.A. BENEDICTA SODERBURG<br><br>**PLAINTIFF**<br><br>v.<br><br>GUILLERMO VEGA TORRES, JANE DOE, INSURANCE COMPANY A<br><br>**DEFENDANTS** | **CIVIL NO.**<br><br>**RE: DIVERSITY** |

**TO THE HONORABLE COURT**: Comes now the Plaintiffs in the case of caption, by and through the undersigned attorney and very respectfully **ALLEGE, STATE AND PRAY:**

## I. JURISDICTION AND VENUE

1. The court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. Section 1332, as the Honorable Federal Court may hear cases in which a citizen from one State sues a citizen from another State or Nation as long the amount at stake is more than $75,000.00. This Court has jurisdiction over the subject matter of this case by virtue the diversity of citizenship between all the parties, and the amount in controversy, without interest and cost, exceeds $75,000.00 , the sum and value specified  28 U.S.C & 1332, and because Plaintiff Ramos is an  American citizen, residing in the State of Illinois with the following address:

### PLAINTIFF ADDRESS

2. Plaintiff Benedicta Ramos A.K.A. Benedicta Soderburg physical address is 2420 Luke Avenue, Zion, IL 60099.

1

3. This Court has jurisdiction over plaintiff's substantive Puerto Rico law claims against the defendants pursuant P.R. Laws Ann , title 32 , App III, Rule 4.7 (a) (1) and (2).

4. This Court has jurisdiction over defendants and/or their insurance carrier unknown as mentioned P.R. Laws Ann , title 26, section 2003 is an insurance company duly authorized to do business in the Commonwealth of Puerto Rico by the Office of the Commissioner of Insurance and had in place an insurance policy for the benefits if any of defendant.

5. Upon information and belief, pursuant 28 U.S.C. 1367, this Court has supplemental jurisdiction over Plaintiff's non-Puerto Rico law claims against the defendants which arise from the same nucleus of facts.  Venue too is proper in this jurisdiction because the events underlying Plaintiff's claim occurred in Adjuntas, Puerto Rico located in the Municipality of Adjuntas, Commonwealth of Puerto Rico.

6. Venue is proper, as Plaintiff's vacation property is located within the territorial boundaries of Adjuntas, Puerto Rico, and Plaintiff and Defendant signed their construction contract in Ponce, Puerto Rico.

## II.  INTRODUCTION

7. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

8. This is a Breach of Contract due to breach, fraud, deceit, malpractice, and bad faith,  Enforcement and Damages Suit to assure the tolling of 15 years, statute of limitation for Breach of Contact and damages arising from breach of contract, loss of income, property damage  and Articles 1044, 1028, 1054 of Civil Code of Puerto Rico of 1930 as well as to toll any statute of limitation that could favor defendants.

9. Defendants' fraudulent, deceitful, bad faith, and negligent acts and/or omissions caused, and contributed to the cause of, Plaintiffs' injuries with full knowledge that he was causing damages to Plaintiff.

### III. JURY TRIAL DEMANDED

10. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

11. Plaintiff demands trial by jury in all causes of action.

### IV. PARTIES

12. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

**a. Plaintiff**

13. The plaintiff Benedicta Ramos A.K.A. Benedicta Soderburg (Hereinafter Plaintiff Ramos) in the present action is natural person, of legal age, marry and a citizen of the United States of America, and resident of the State of Indiana.

14. Plaintiff Benedicta Ramos A.K.A. Benedicta Soderburg address is 2420 Luke Avenue, Zion, Il 60099.

**Defendants**

15. Defendant Guillermo Vega Torres (hereinafter Defendant Vega) is construction contractor, and is a is a resident of Ponce, Puerto Rico whose residence is located at Urb. Camino Del Sur, 378 Calle Gorrion, Ponce, PR 00731.

16. Defendant Vega at the time of the facts alleged to be a contractor and was doing business as "GP Group" whose principal place of business is located at Condominium San Vicente, Oficina 414, Calle Concordia #8169, Ponce, PR 00717 .

17. Jane Doe is the fictitious name of a natural person (whose name and address are unknown at the present ) as that term is used in the text of the Statute and is held liable due to

his/her intentionally/negligent action caused damage to all Plaintiffs . She is brought into this civil action as he could be liable to plaintiff for the acts described in the instant complaint to toll any statute of limitations that could favor them.

18.   Insurance Company A is the fictitious name of a legal entity  (whose name and address is unknown at the present )  as that term is used in the text of the Statute and has any responsibility due to his/her intentionally/negligent action caused damage to Plaintiff Ramos . It is brought into this civil action as it could be liable to plaintiffs for the acts described in the instant complaint to toll any statute of limitations that could favor them.

## V. FACTUAL ALLEGATIONS

17. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

18.   Plaintiff "Ramos" is the legal owner of a property located at Carretera P.R. 518, Ramal 388, Km. 0.2, Camino Alcides in the Municipality of Adjuntas, Puerto Rico. Located on that property is a residential building, which Plaintiff Ramos wanted to repair and expand for use as a vacation home, so that when she or her family visits, they would have a comfortable place to stay, and during the time she and authorized family members were not using it, it would be rented out as a short term vacation rental for an additional source of income to replenish what had Plaintiff had spent on construction.

19. Eventually Plaintiff Ramos was visiting Puerto Rico to begin the initial steps to construct and repair a property which she owns, with the purpose of using it as a vacation home in the Municipality of Adjuntas, and to rent it out as a short term vacation rental during the time that she or authorized family members were not using it.

20.   During her stay in Puerto Rico, she began asking for references for construction contractors from residents of Adjuntas, and she determined that it was most

4

convenient to hire Defendant Guillermo Vega Torres D/B/A GP Group.

21. Once Plaintiff Ramos contacted Defendant Vega in relation to the Construction Services, Defendant Vega indicated that he was a licensed engineer, and that Plaintiff Ramos would have to pay him for the Blue Prints of the home with requested changes and repairs. Plaintiff then paid the requested three thousand dollars ($3,000.00) for the preparation of the blueprints of her home. Said payment was made by check on September 13, 2018, with check number 168. Defendant Vega complied with the preparation of the aforementioned blueprints, within the agreed upon term; thus giving Plaintiff Ramos a false sense of security and the impression that Defendant Vega was a responsible contractor, thus gaining the trust of Plaintiff Ramos.

22. However, due to Plaintiff's circumstances, her inability to be present during construction, and not having anyone to check in on progress, she insisted that the rest of the work to be completed required a written contract, and informed Defendant Vega that she would be unable to be present during the course of construction, as she was a resident of the State of Illinois, and that she had no one available to be present during construction. Defendant stated he would prepare a contract, and informed Plaintiff when it was ready to be signed. .

23. Plaintiff Ramos informed Defendant Vega that her sister Noemi Ramos-Feliciano, with whom she shared a joint checking account in Banco Popular, would write out the checks for payment of the construction, as Plaintiff Ramos was not a resident of Puerto Rico and would only come to the Island sporadically. She informed Defendant Vega, that her sister would be unable to go to the construction site due to her busy workload and family life.

24. Plaintiff Benedicta Ramos Feliciano then entered into a contract with Guillermo Vega Torres for Project Manager and Construction Services, prepared by Defendant Vega Torres for the construction, reparation, and expansion of Plaintiff Ramos's vacation home.

25. Said contract was signed in Ponce, Puerto Rico on March 13, 2019, by both Plaintiff and Defendant Vega. The contract included the mutual obligations of each party, and the value of said contract was Two Hundred Eight Thousand Dollars ($208,000.00), for the construction of an expansion of Plaintiff's Adjuntas vacation home.

26. Pursuant the aforementioned contract, Plaintiff and Defendant agreed that construction would be done in six (6) steps, and that Plaintiff would make an initial payment of Sixty Thousand Dollars ($60,000.00), out of which Defendant Vega would hire an Inspector of Plaintiff Ramos's choosing, land measurements, boundary point identification, and plan for inscription at the Property Registry Office and house plan. Plaintiff paid Defendant the amount of Sixty Thousand Dollars ($60,000.00) on the date of March 14, 2019, check number 169.

27. On March 14, 2019, Plaintiff also paid plaintiff two thousand nine hundred ninety-six dollars and eighty-five cents ($2,996.85) for payment of Municipal Construction Taxes payment, which Defendant claimed he would pay.

26. On April 12, 2019, Plaintiff then paid Defendant Vega the amount of Forty Thousand Dollars ($40,000.00), as Defendant Vega informed her that phase one had been completed. Said payment was made by check number 101.

28. On September 6, 2019, Plaintiff paid Defendant thirty thousand dollars

($30,000.00), after Defendant demanded said amount to begin Phase 3 of the project. Plaintiff paid Defendant with check number 105.

29. Defendant later demanded the amount of thirty thousand dollars ($30,000.00) to begin phase 4 of the project. Plaintiff authorized payment and payment was made with check number 106, on November 19, 2019.

30. In total Plaintiff paid Defendant the amount of one hundred sixty-five thousand nine hundred and ninety-six dollars and eighty-five cents of the two hundred eight thousand dollar ($208,000.00) contract.

31. Then Plaintiff Ramos made a surprise visit to Puerto Rico to check on the progress of construction of her Adjuntas Vacation Home; and was horrified to see that absolutely no work had been done on it. She then made calls to the appropriate governmental agencies, and found that, in violation of their contract, Defendant did not present ant evidence that paid the State Insurance Fund Policy, known as Fondo Seguro del Estado in Spanish, nor did he pay the Municipality of Adjuntas the Construction Taxes (known in Spanish as Arbitrios de Construcción), nor had he paid any certification, tax stamps, nor fees for inspection. In violation of the contract, Defendant Vega had had not acquired the construction bond, nor any of the fixtures nor construction materials for which Plaintiff Ramos had paid him.

32. Plaintiff Ramos then confronted Defendant Vega who became defensive and refused to speak to her or her family members. Plaintiff Ramos, due to obligations in Illinois, had to return there, and continued to try to contact Defendant Vega to discuss what they would do to either fix the problem or have Defendant Vega return what had been paid to him. Defendant Vega refused to answer Plaintiff Ramos's many attempts to

communicate.

33. As of today, Defendant Vega has only prepared the blueprints of Plaintiff Ramos home, he has only complied with none of the stipulation of the contract.

34. In clear violation of the contract between the parties Defendant Vega has failed to:

a. Commence construction to expand the vacation residence in Concrete according to the blueprints in violation of the First Article of the Contract.

b. Construct the first and second floors of the vacation home per Article 2 of the contract, which includes: Construction of First and Second Floor according to blueprints; Purchase and Installation of: Ceramic floor tiles; toilets; bathroom sinks, shower pipes (mezcladoras de ducha); The pipes for bathroom sinks, mirrored closet doors; shower wall tiles, All interior doors and hardware, All exterior doors and hardware; Terrace Door and hardware; all windows and hardware; PVC Cabinets and countertops; Electrical Facilities installation and fixtures, plumbing installation, Electrical Pedestal Transformer; Motorized sliding gate; Complete interior/exterior paint job using HEHR paint; subterranean cable tv system with panel for total home distribution; compliance with established requirements pursuant the P.R. Construction Code and Commonwealth of Puerto Rico Agencies. Defendant Ramos has failed to comply with Article 2, Subsections 1-21 of the Construction Contract.

c. Hire the inspector, measure the land, set boundaries after identifying boundary points, prepare a plan to be inscribed by the Property Registry of Puerto Rico. (Phase 1). Plaintiff Ramos paid Defendant Vega sixty thousand dollars ($60,000.00) by check number 188 on March 14, 2019. Plaintiff Ramos paid Defendant Vega the amount of two thousand

nine hundred ninety six dollars and eighty-five cents ($2,996.85) to pay for construction taxes (arbitrios) to be paid to the Municipality of Adjuntas. Defendant Vega has not complied with any measures included in Clause 1 Step 1 of the contract.

d. Excavation of the new foundation, installation of metal construction rods in the new foundation, installation of steel rods for columns, installation of steel rods for new floor; installation of electrical and plumbing, and concrete floor and purchase of these materials in violation of Clause 1, Step 2 of the contract. Plaintiff Ramos paid Defendant Vega forty thousand dollars ($40,000.00) by check number 101 on September 12, 2019, based on Defendant Vega's untrue allegation that he had completed Step 1, and demand for payment of step 3 of Clause 1 of the contract.

e. Construction of walls with concrete blocks for the first floor, and fill columns with concrete, and purchase of these construction materials in violation of Clause 1, Step 3 of the contract. Plaintiff Ramos paid Defendant Vega thirty thousand dollars ($30,000.00) by check number 105 on September 6, 2019, based on Defendant Vega's untrue allegation that he had completed Step 2 and demand for payment for step 4 of Clause 1 of the contract.

f. Construction of ceiling (falso piso del techo) on the first floor of the vacation home; install roof rods of the first floor and fill in concrete for roof of first floor. In violation of Clause 1, Step 4 of the contract. Plaintiff Ramos paid Defendant Vega thirty thousand dollars ($30,000.00) by check number 106 on November 19, 2019, based on Defendant Vega's untrue allegation that he had completed Step 3 of the contract and demand for payment of step 4 of the Clause 1 of the contract.

35. As of today, Plaintiff has paid a total of One Hundred Sixty Five Thousand

Nine Hundred Ninety Six Dollars and Eighty Five Cents ($165,996.00), and Defendant Vega has only created the blueprints of the home (planos) for which the price charged to Plaintiff Ramos was three thousand dollars ($3,000.00). Defendant Vega has demonstrated a pattern of conduct of misinforming Plaintiff Ramos as to what has been completed, and demanding payment for work and materials for which he has no intention of ever realizing.

36. The term of the contract would be two – hundred forty workdays, which Plaintiff Ramos was impressed by, as she was eager to both visit family and begin steps to rent out the property.

37. Though the State Police were contacted, they informed that due to different phases being present in the contract, they would not involve themselves in the matter.

38. After realizing that Defendant Vega has no intention of ever completing the work, Plaintiff Ramos has contacted different firms for quotes on the work, and the average price requested is approximately Sixty-Seven Thousand Dollars ($67,000.00). A marked difference from the two hundred eight thousand dollars quoted by Defendant Vega, and an amount already paid to Defendant Vega, which demonstrates a pattern of misconduct on the part of Defendant Vega.

39. Due to the fact that Defendant Vega has never purchased any construction performance bond, he deprived plaintiff from collecting on payments based on fraudulent information given to her by Defendant Vega.

40. Defendant Vega took advantage of Plaintiff Ramo's age senior citizen, and lack of knowledge of construction , the cost of construction , and contracts and charged a exorbitant amount per phase, that he had no intention of ever completing, all the while

passing himself off as an Engineer.

41. Defendant Vega, though knowledgeable as to the norms of construction and construction contracts, omitted to add any termination clauses within the contract that he prepared.

**FIRST CAUSE OF ACTION- BREACH OF CONTRACT- CANCELLATION**

42. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

43. The contract between the parties in the present case was signed by both parties prior to the repealing of the Civil Code of Puerto Rico of 1930, and thus is subject to that code.

44. Pursuant to the Civil Code of Puerto Rico of 1930, Contracts have the force of law between the contracting parties, who are obliged to observe their terms. See Article 1044 of the Civil Code of Puerto Rico of 1930, supra, sec. 2994.

45. Article 1028 of Civil Code of Puerto Rico of 1930, supra, sec. 3373, establishes that the Validity and compliance of contracts cannot be left to the discretion of one of the contracting parties."

46. The party that incurs fraud, negligence, late payment or contravenes the fulfillment of the obligations contracted, is subject to compensation for the damages caused. Article. 1054 of the Civil Code of Puerto Rico of 1930, supra, sec. 3018.

47. The parties signed a construction contract on March 13, 2019, that had a term of 240 work days, with advance payment per phase once prior phase had been completed, and advance payment to Defendant Vega for payment of work, materials, bonds, construction taxes, and inspection.

48. The contract was drawn up by Defendant Vega, a construction professional with knowledge of construction contracts and practices and did not include termination clauses.

49. Defendant Vega informed Plaintiff Ramos that he held a license in Engineering.

50. Defendant Vega used his knowledge and Plaintiff Ramos's lack of knowledge of construction practices, construction costs, material costs, and Ramos's age to charge her exorbitant costs and fees that were far4 above the average costs and fees being charged at that time.

51. Defendant Vega charged Plaintiff Ramos for Construction Taxes and permits pursuant verbal agreement, and Inspector Fees pursuant Clause 1 of the contract, and after receiving said funds, Defendant Vega did not make any effort to and never did pay for Construction Taxes, permits and the contracting of an Inspector. Pursuant to clause 1 of the contract as well as Subsection 20 of Section 2 of the Contract.

52. Defendant Vega had knowledge that Plaintiff had no family member that could go to visit the site, and began charging her for phases up to phase four, although he had not begin or complete phase two to four, in violation of Clause 1 of the Contract.

53. Defendant Vega failed to pay the State Insurance Fund Policy pursuant to sub-section 21 of Section 1 of the Contract.

54. Defendant Vega failed to pay for Performance, Materials and Labor Bonds in violation of Subsection 20 of Section 2.

55. Defendant Vega failed to comply with the term to complete construction within 240 work days in violation of Clause 2 of the Contract.

56. Defendant Vega has used his knowledge of the Construction Field and Plaintiff's lack of knowledge of the Construction Field to leave her defenseless and without remedy, but for judicial action.

## SECOND CAUSE OF ACTION- BREACH OF CONTRACT FOR LACK OF COMPLIANCE

57. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

58. Defendant Vega only completed preparation of the blueprints of the property, he did not comply with any other work, materials, costs, and fees included in the contract, yet charged her: $60,000.00 for phase 1, which he did not complete; $40,000.00 for Phase 2, which he did not complete; $30,000.00 for Phase 3, which he did not complete; $30,000.00 for Phase 4, which he did not complete; $2,996.85 for construction taxes, which he did not pay for.

59. In total, Plaintiff Ramos paid to Defendant Ramos a total of $162,996.85 for work, materials, costs, and fees which he did not even begin, though the contract stated that he would only charge after a phase was complete.

60. Defendant Vega then evaded contact attempts by Plaintiff and refused to refund any of the money to her.

61. The contract between Plaintiff Ramos and Defendant Vega must be enforced, and Defendant Vega must comply with the terms and obligations contained within the contract.

### THIRD CAUSE OF ACTION- BREACH OF CONTRACT

62. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

63. Due to the fact that Defendant Vega had full control over the property and took no measures to protect it, with an insurance policy, he is liable to Plaintiff Ramos for damages and deterioration caused to her vacation home and the property in general.

64. Defendant Vega knew that an insurance policy such as a course of construction or contractor policy over the property is the norm in the construction industry, yet he did not inform Plaintiff Ramos of this norm, nor did he purchase a policy to protect Plaintiff Ramos's Property.

65. Defendant Vega did not comply with his obligation of caring and maintaining Plaintiff Ramos's Property during the time he had control over the same.

66. Lack of maintenance of the premises will cause a higher amount for construction and expansion of Plaintiff's property, it will lower the value of the property and make renting or even selling the property more difficult.

67. Defendant Vega is liable to Plaintiff Ramos to pay for damages and loss of income.

### FOURTH CAUSE OF ACTION- EMOTIONAL DAMAGES

68. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

69. Because Defendant Vega acted with malice, deceit, and intention to knowingly defraud Plaintiff Ramos he is liable for Emotional damages caused to her for failure to comply with their contract.

70. Upon learning that after paying Defendant Vega $165,000.00 of her hard earned money, she suffered emotional damages and continues to suffer emotional damages and will continue to suffer emotional damages until

they are repaired. She felt shame and embarrassment for being defrauded, she suffers intense worry that there will be no remedy, she suffers worry that she will have to shell out thousands upon thousands of dollars to have the expansion and construction work finished; she worries that she will be unable to use the property for short term rental, and was counting on that money for supporting herself.

71. Defendant Vega, acting with malice, deceit, and intention to knowingly defraud Plaintiff Ramos through over-charging plaintiff, not doing any construction work, and not maintaining the property is liable to Plaintiff for emotional damages.

72. Defendant Vega knows that his failure to comply with the contract and intention to defraud Plaintiff Ramos would naturally result in Plaintiff Ramos's emotional damages, yet he knowingly continued with said misconduct.

## FITH CAUSE OF ACTION- LOSS OF INCOME

73. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

74. Plaintiff Ramos had intended to use her expanded and repaired vacation home as a short term rental charging $100.00 per night.

75. Plaintiff Ramos had the expectation of income for short term rental for at least six (6) months minimum of the year.

76. Defendant was to finish the construction work within 240 days of execution of the contract. Even if Defendant had started construction work on April 4, 2019, he

should have completed the work by November 30, 2019. From November 30, 2019 until February 15, 2024, there are 1538 days. Defendant Vega has deprived Plaintiff from 769 days of rental fees which has a total of $76,900.00.

### SITH CAUSE OF ACTION- ATTORNEYS FEE'S

77. Plaintiff alleges and incorporates by reference as though fully set forth herein the allegations set forth in all previous Paragraphs.

78. Because Defendant Vega acted with bad faith, malice, deceit, and intention to knowingly defraud Plaintiff Ramos through incompliance of the contract between them, and refuses to return all funds to her, he is liable for attorney's fees.

79. Plaintiff Ramos made many attempts to contact Defendant Vega, who has continually evaded contact with her.

80. Defendant Vegas willful misconduct, bad faith, incompliance with the contract, has caused Plaintiff to file the present lawsuit and incur in attorney's fees, expenses and costs of the proceedings of litigation for which Defendant Vega must be held liable for paying, as it is common knowledge that bad faith, temerity, and fraud will result in legal action.

### VII. PRAYER FOR RELIEF:

81. Plaintiffs reproduces and reaffirms as if alleged herein each and every one of the preceding allegations.

**WHEREFORE,** the appearing Plaintiffs most respectfully request that this Honorable Court GRANT the present Complaint in its totality and to enter Judgment in favor of plaintiffs against defendants for the sums of :

1) The payment of $163,000.00 for return of payments made by Plaintiff to

Defendant for construction work, fees, construction taxes and materials.

2) Enforce Defendant to provide proper maintenance for the property and to pay for any loss of value which is estimated to be $50,000.00

3) Enforce amendments to the contract that provide for payment of Performance, Payment, and Material Bonds; payment of Construction Taxes; Payment of an insurance policy covering Plaintiff's Property.

4) The payment of at least $50,000.00 in foreseeable emotional damages which Defendant Vega caused Plaintiff Ramos.

5) Payment of loss of short-term rental income valued at $76,900.00

6) Costs and attorney's fees for this proceeding at no less than $112,167.00

7) Any other relief that this Honorable Court may deem appropriate.

Respectfully submitted in Ponce to San Juan, Puerto Rico this April 24th, 2024.

                                      **RESPECTFULLY SUBMITTED**

**JRAF LAW FIRM P.S.C.**
**P.O. BOX 7498**
**PONCE, PR 00732**
**TEL. (787) 247-9056**
**EMAIL: riveraroman@hotmail.com**

**SS/ JUAN P. RIVERA ROMAN, ESQ.**
**USCD 210906**